**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KIMBERLY SNOW,

      Plaintiff,                          CIVIL ACTION NO. 09-CV-10623

vs.

                                         DISTRICT JUDGE NANCY G. EDMUNDS

UTILITY WORKERS UNION            MAGISTRATE JUDGE MONA K. MAJZOUB
OF AMERICA, LOCAL 223,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED** and Plaintiff's Complaint be dismissed.

**II.**     **REPORT:**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Utility Workers Union of America, Local 223. (Docket no. 12). The motion is unopposed. All pretrial matters have been referred to the undersigned for decision. (Docket no. 5). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). Defendant's motion is now ready for ruling.

**A.**     **Facts and Procedural History**

Plaintiff was employed with DTE Energy from March 3, 1997 through December 10, 2007, most recently as a collection representative. On September 10, 2007 DTE Energy conducted a fact finding investigation pursuant to the collective bargaining agreement ("CBA") between DTE Energy and Defendant Utility Workers Union of America, Local 223, the Union that represented Plaintiff.

1

The purpose of the fact finding was to investigate claims that Plaintiff made unauthorized adjustments to her personal electric account and to the account of a coworker in order to delay collection efforts and utility shutoff on their delinquent DTE accounts and enroll them in low-income payment plans for which they did not qualify. (Docket no. 12, Ex. 8). Plaintiff participated in the fact finding meeting. The Union secretary, Union representative, and management representatives, including Plaintiff's immediate supervisor, were also in attendance. (Docket no. 12, Ex. 8). At the conclusion of the meeting DTE suspended Plaintiff pending the results of their investigation.

On December 10, 2007, DTE terminated Plaintiff after concluding that she performed transactions that violated corporate policy, delayed the collection and shutoff process on accounts, and hindered DTE's ability to collect the amount owed on each account. Immediately following her termination, Plaintiff filed a grievance protesting her discharge. On the same day it received notice of Plaintiff's discharge, Defendant Union filed a written grievance of the discharge. (Docket no. 12 at 5).

Plaintiff met with Union representatives to discuss the case the Union expected to present during the grievance hearing and to help prepare for the hearing. (Docket no. 12, Ex. 1 at 35). On April 10, 2008 and April 28, 2008 a Step 3 grievance hearing was conducted relative to Plaintiff's grievance. DTE President Delegate Ronald Haberstroh presided over the hearing. (Docket no. 12, Ex. 4, 5). On July 8, 2008, Haberstroh issued DTE's decision denying Plaintiff's grievance and finding that management had just cause for terminating Plaintiff's employment. (Docket no. 12, Ex. 14). Haberstroh's decision prompted Union representative Rich Harkins to present a motion to arbitrate Plaintiff's grievance to the Union's Executive Board on September 9, 2008. (Docket no.

12, Ex. 15). Plaintiff was present during the Executive Board meeting. (Docket no. 12, Ex. 15). The Executive Board denied the motion and decided that it would not submit the grievance to arbitration. (Docket no. 12, Ex. 15, 16).

On February 19, 2009 Plaintiff filed a *pro se* Complaint under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, alleging that Defendant Union breached its duty of fair representation by failing to proceed to arbitration. Specifically, Plaintiff alleges that Defendant breached its duty of fair representation when it (1) failed to process her grievance through Steps 1 and 2 of the grievance procedure, which required Defendant to discuss her discharge with her immediate supervisor (docket no. 1, ¶ 5; docket no. 12, Ex. 1 at 16-17); (2) refused to represent her and proceed to arbitration even though the Union did not investigate whether Plaintiff had written authorization to make the account adjustments she was accused of making (docket no. 1, ¶ 6; docket no. 12, Ex. 1 at 19-21); (3) submitted the arbitration decision to a private vote of Union Executive Board members when the CBA did not provide for such a vote (docket no. 1, ¶ 7; docket no. 12, Ex. 1 at 23-26); and (4) failed to arbitrate her grievance (docket no. 1, ¶ 8, 10). Plaintiff also alleges that her grievance should have been processed twenty days after the September 11, 2007 fact finding meeting, rather than after her discharge. (Docket no. 12, Ex. 1 at 30-34). Defendant Union now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

**B.     Governing Law**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case.

3

*Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A breach of the duty of fair representation occurs when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190 (1967) (citations omitted). Proof of bad faith is found if the union acts "with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) (citations and internal quotation marks omitted). A plaintiff arguing a breach of duty of fair representation claim under the discrimination prong must provide "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Id*. (citation omitted).

A union acts arbitrarily if its conduct is "so far outside a wide range of reasonableness" that it is "wholly irrational." *Id.* (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). A union's duty of fair representation may be breached if the union ignores a complaint or processes a grievance in a careless or perfunctory manner. *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 311-12 (6th Cir. 1975). However, "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." *Vaca*, 386 U.S. at 192.

4

**C.     Analysis**

Plaintiff contends that Defendant Union breached its duty of fair representation when it failed to discuss her discharge with her immediate supervisor as required under Step 1 of the grievance procedure. She claims that her grievance should have been processed twenty days after the September 11, 2007 fact finding meeting, rather than after her discharge. She also makes allegations related to Defendant Union's duty to arbitrate, including that the Union should not have submitted the arbitration decision to the full Executive Board, and should have chosen to arbitrate her grievance because it failed to fully investigate whether Plaintiff had received authorization to make account adjustments.

Article 4 Section 2 of the CBA between DTE and Defendant Union establishes the four-step grievance process to be followed if a disagreement arises between an employee and the Company. Under Step 1 of the process, any disagreement between an employee and the Company is deemed a grievance and shall be discussed by the employee and her immediate supervisor, either personally, or with or through her Union representative. (Docket no. 12, Ex. 2 at 10-11).

Article 6 of the CBA provides grievance and arbitration procedures relative to suspension and discharge and provides:

> [P]rior to discharge, suspension, decision making leave (DML), or demotion for cause of an employee, the Company will conduct a fact finding meeting with the Chairperson of the bargaining unit or, Acting Chairperson, or the Chairperson's designee. . . . Unless otherwise agreed between the Company and the Union, if an employee is discharged, suspended, given a DML, or demoted for cause, the Union shall be notified of such action promptly in writing by the Company. . . . If the employee is not probationary, the employee or the Union may, within twenty (20) days . . . of notice to the Union, file a written grievance directly with the President of the Company to protest such action without taking the preliminary steps of the grievance procedure set forth in Section 2 of Article 4. . . . Therefore, such employee shall have the right to a prompt hearing on such charges before the President of the Company or the President's Delegate. . . . If the Union is not satisfied with the

5

decision of the President or the President's Delegate, the Union may submit such grievance to arbitration. . . ." (Docket no. 12, Ex. 2 at 14-15).

Plaintiff testified in her deposition that the Defendant should have filed a grievance following the September 11, 2007 fact finding hearing and should have discussed her discharge with her immediate supervisor as required under Step 1 of the grievance procedure. However, Plaintiff offers no evidence to show that she requested that her Union representative act on her behalf in a discussion with her supervisor under the Step 1 process of Section 4.2. The record shows that the Union followed the grievance procedure outlined in Article 6 of the CBA, which permits it to file a suspension or discharge-related grievance directly with the President of the Company and bypass the four-step process set forth in Article 4. The Court has no reason to conclude that it was improper for the Union to proceed under Article 6 following Plaintiff's discharge. Furthermore, even if the Court were to determine that the Union should have processed Plaintiff's grievance in September 2007 as opposed to December 2007, Plaintiff presents no evidence to show that the Union delayed filing the grievance for arbitrary, bad faith, or discriminatory purposes.

Next, Plaintiff argues that the Union breached its duty of fair representation by failing to arbitrate her grievance. Plaintiff's claim is largely based on the Union's decision to present the arbitration decision to a vote before the Union Executive Board, and its decision not to arbitrate even though it allegedly failed to adequately investigate the grievance. The Union has broad discretion in determining which grievances to submit to arbitration. *See Vaca*, 386 U.S. at 191-92. Even if Plaintiff's grievance was meritorious, the Union was still within its right to decide not to submit the grievance to arbitration provided that decision was based on rational and objective grounds. *Kaiser v. United States Postal Service*, 785 F. Supp. 648, 662 (E.D. Mich. 1992) (citations omitted). Plaintiff has presented no evidence to show that the Union's investigation or the Executive Board's

vote on arbitration were motivated by bad faith, discriminatory animus, or were so far outside the range of reasonableness as to be irrational.

The record shows that there was substantial evidence of wrongdoing offered against Plaintiff in her fact finding meeting and grievance hearing. The record also shows that the Union representative was an effective advocate on Plaintiff's behalf throughout the grievance process. Without evidence to show otherwise, there is simply no basis for deriving that the Union violated its duty of fair representation as Plaintiff contends. Accordingly, this Court recommends that Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED** and Plaintiff's Complaint be dismissed.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later

than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: September 29, 2010         s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

    I hereby certify that a copy of this Report and Recommendation was served upon Kimberly Snow and Counsel of record on this date.


Dated: September 29, 2010         s/ Lisa C. Bartlett
                                  Case Manager